# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# DURHAM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SCHOFIELD-JOHNSON, LLC, ) | Case No: 09-81347 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| SCHOFIELD-JOHNSON, LLC, ) | |
| ) | |
| Plaintiff, ) | Adv. No: 09-09067 |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| COMMISSIONER OF INTERNAL ) | |
| REVENUE SERVICE ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION

This adversary proceeding was tried on August 22, 2011. Anne E. Blaess appeared on behalf of the above-captioned defendant (the "IRS"), and W.Y. Alex Webb and Jason A. Morton appeared on behalf of the above-captioned plaintiff ("Schofield-Johnson"). In this case, the IRS filed a lien and levied upon an account belonging to Schofield-Johnson, with the intent to use these funds to pay a tax liability owed by Sammy Johnson ("Sammy"). Sammy's wife, Victoria Johnson ("Victoria"), is the majority shareholder in Schofield-Johnson, an entity in which Sammy has no ownership interest. Schofield-Johnson seeks a judgment declaring that the levy by the IRS was wrongful and that its account may not be used to satisfy Sammy's individual tax liability. The IRS seeks a ruling that Schofield Johnson is merely the nominee of Sammy Johnson or that Sammy's transfer of certain

1

funds to Victoria was fraudulent, and that therefore, the IRS may properly levy upon Schofield-Johnson's account to satisfy Sammy's tax liability.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), which this Court has the jurisdiction to hear and determine.

## II. FACTS

In 1997, Sammy sued his employer, Colonial Life Insurance Company ("Colonial"), for wrongful discharge and breach of contract. In 1999, Sammy filed a Chapter 7 bankruptcy but did not list his claim against Colonial as an asset of his bankruptcy estate.

In 2004, Sammy and his wife Victoria moved to certain property in Hurdle Mills, North Carolina, which they purchased from Victoria's son Hunter, and began living in a mobile home situated on the property. On March 1, 2006, Sammy received a net judgment of approximately $1,000,000.00 (the "Judgment Proceeds") as a result of his lawsuit against Colonial. Shortly thereafter, Sammy directed that the Judgment Proceeds be deposited into Victoria's checking account (Sammy did not have a checking account). After the funds were deposited into her account, Victoria placed a portion of the funds in a money market account, another portion in an investment account, and used another portion to build a house on the Hurdle Mills property. The funds were also used to purchase a new Prius automobile and to give approximately $90,000 to her children.

Sometime between late 2006 and early 2007, Sammy hired various tax professionals, ostensibly to determine whether the Judgment Proceeds were taxable. According to Sammy, an

2

accountant named Keith Pleasant told him that, based on Murphy v. I.R.S., 460 F.3d 79 (D.C. Cir. 2006), at least portion of the funds might not be taxable. Sammy claims that Mr. Pleasant advised him to wait until the case was resolved on appeal before filing a tax return. Accordingly, Sammy filed for an extension of time. On July 3, 2007, the Murphy case was resolved in favor of the IRS (Murphy v. IRS, 493 F.3d 170 (D.C. Cir. 2007)), at which point it became clear that all of the Judgment Proceeds were taxable.

Sammy then filed a tax return with the IRS listing a $356,660 tax liability due to his receipt of the Judgment Proceeds. He enclosed a payment of $1,000.00, which he contends was a good-faith showing that he intended to pay his tax liability in installments. He never asked Victoria to return the Judgment Proceeds, nor did he ask her for any money with which to pay his tax liability.

On February 26, 2008, Victoria formed Schofield-Johnson with her two sons, Hunter and Matthew, for the dual purposes of protecting assets against any potential malpractice claims (Victoria is a physician) and developing family land. Hunter and Matthew are not Sammy's sons, and Sammy has not held any interest in Schofield-Johnson since its formation. Shortly after forming Schofield-Johnson, Victoria, Hunter, and Matthew funded the company as follows. First, Victoria contributed her investment account (in which the Judgment Proceeds were deposited) and the 12 acres of land on which her and Sammy's home is located (the home was built and furnished using the Judgment Proceeds). Second, Hunter and Victoria contributed 52 acres of land that they owned jointly. Third, Matthew contributed $1,000.00. Sammy contributed nothing.

On July 15, 2009, after failed attempts to collect the money from Sammy, the IRS filed a lien against all of Schofield-Johnson's real and intangible property in order to satisfy Sammy's tax liability of $494,320 (a $381,000 assessment plus statutory penalties). The next day, the IRS levied on and attempted to seize Schofield-Johnson's investment account at RBC Wealth Management, and the funds were scheduled to be released to the IRS on August 12, 2009. On August 10, 2009, Schofield-Johnson filed its Chapter 11 bankruptcy.

### III. DISCUSSION

**A.  Schofield-Johnson is a Nominee of Sammy Johnson**

While there is no express authority for it in the Internal Revenue Code, the Supreme Court in G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977), authorized the federal government to enforce federal tax liens against property owned by a third-party that is a nominee or alter ego of a delinquent taxpayer. See also United States v. Scherping, 187 F.3d 796, 801 (8th Cir. 1999); Shades Ridge Holding Co., Inc. v. United States, 888 F.2d 725, 728 (11th Cir. 1989); Lemaster v. United States, 891 F.2d 115, 119 (6th Cir. 1989). In deciding whether the IRS may enforce such a lien against property owned by a third-party, a court must first determine whether the delinquent taxpayer has any rights in the property under state law. Drye v. United States, 528, U.S. 49, 58 (1999); U.S. v Thornton, 859 F.2d 151, 1988 WL 97278 at *2 (4th Cir. 1988) (unpublished table opinion).

To date, there are no published opinions from the Fourth Circuit that apply the law of federal tax liens to property held by a nominee or alter ego of the taxpayer. In U.S. v. Thornton, the Fourth Circuit held that when determining whether a taxpayer has rights in property under Maryland law, the district court should apply the law of resulting trusts as opposed to state law regarding the

4

collection of real estate taxes.  1988 WL 97278 at *3.  However, the Middle District of North Carolina has recently held that the law of fraudulent transfers is the appropriate law to determine the ownership status of property, especially in cases where the government specifically pleads the elements of a fraudulent conveyance.  OMOA Wireless v. United States, 2010 WL 3199959 at *5-6 (M.D.N.C. Aug 12, 2010) (slip op.).  The codification of North Carolina fraudulent conveyance law obviates the need to rely on the equitable remedy of a resulting trust.  Id.

In this case, the IRS argues, as it did in OMOA Wireless, that Sammy's transfer to Victoria was fraudulent.  Because the IRS does not make any resulting trust claims, its nominee claim should be considered together with its fraudulent conveyance claim.  In other words, based on the holding in OMOA Wireless, the Court should first consider whether the transfers at issue were fraudulent in order to determine whether Sammy retains any property rights in the Judgment Proceeds that are now in the possession of Schofield-Johnson.  If the transfers are fraudulent—and therefore Sammy still retains property rights in the proceeds—Schofield-Johnson may be the nominee of Sammy, and the IRS may enforce its lien and levy.  The IRS may also have separate remedies under North Carolina fraudulent conveyance law, as discussed below.

**B.  The Transfer from Sammy to Victoria was Fraudulent**

N.C. Gen.Stat. § 39-23.4(a) provides that a

> transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation... [w]ith intent to hinder, delay, or defraud any creditor of the debtor.

N.C. Gen.Stat. § 39-23.4(b) lists the following factors that the court may consider when determining a debtor's intent:

1.  The transfer or obligation was to an insider;

5

2. The debtor retained possession or control of the property transferred after the transfer;
3. The transfer or obligation was disclosed or concealed;
4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
5. The transfer was of substantially all the debtor's assets;
6. The debtor absconded;
7. The debtor removed or concealed assets;
8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
10. The transfer occurred shortly before or shortly after a substantial debt was incurred;
11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor;
12. The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the became due; and
13. The debtor transferred the assets in the course of legitimate estate or tax planning.

When analyzing these factors to make a determination of the debtor's intent, a court should evaluate the entirety of the circumstances surrounding the transaction at issue and "may appropriately take into account all indicia negativing as well as those suggesting fraud." N.C. Gen.Stat. § 39-23.4(b) cmt. (6).

Sammy, while not a debtor in the above-captioned bankruptcy case, is the debtor/transferor who the IRS alleges has fraudulently transferred the Judgment Proceeds to Victoria in order avoid a debt owed to the IRS. Because the third, fourth, sixth, seventh, ninth, and eleventh factors are not implicated by the facts of this case or by the arguments of the parties, they will not be analyzed.

The facts of this case implicate the first factor—a transfer to an insider. While North Carolina's fraudulent conveyance law is relatively new, it is based on the Uniform Fraudulent

Transfers Act. Other states that have adopted this statute have held that family members are insiders—in fact, the annotations to the North Carolina General Statutes cite to many of these cases. See, e.g., Triangle Bank v. Eatmon, 547 S.E. 2d 92, 96 (N.C. App. 2001) (loan guarantor's conveyance of remainder interest in real property to her son and his spouse was a transfer to an insider); Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582-83 (2d Cir. 1983) (insolvent debtor's purchase of two residences in the name of his spouse and the creation of a dummy corporation for the purpose of concealing assets held to evidence fraudulent intent); Travelers Indem. Co. v. Cormaney, 258 Iowa 237, 138 N.W.2d 50 (1965) (transfer between spouses said to be a circumstance that shed suspicion on the transfer and that with other circumstances warranted avoidance). However, a transfer to a family member or an affiliated corporation alone is not dispositive of a fraudulent intent. Although such transfers trigger closer scrutiny of the circumstances, a conclusion of fraudulent intent requires proof of additional factors listed above. See N.C. Gen.Stat. § 39-23.4(b) cmt (5); Travelers, 258 Iowa at 247-248; Hatheway v. Hanson, 297 N.W. 824, 827 (1941) (transfer from parent to child said to require a critical examination of surrounding circumstances, which together with other indicia of fraud, warranted avoidance). Thus, while nobody disputes that Sammy transferred the Judgment Proceeds to an insider, this fact alone is not enough to prove Sammy's intent.

      The second factor—whether the debtor retained possession or control over the property—is highly contested in this case. The IRS claims that because Sammy is married to Victoria (who admittedly has control over the funds), lives in the house purchased with the funds without paying rent, and refers to the house as "our house" and the funds as "our settlement," he therefore has control over or possession of the funds. Schofield-Johnson argues that Sammy has no interest in the

7

company, which has possession of the Judgment Proceeds. It further argues that Sammy has nothing to do with its business affairs and does not interfere with Victoria's use of the money in the company. Nor does Sammy direct Victoria in deciding how to spend the money. Schofield-Johnson also argues that not paying rent to Victoria, and using terms like "we" and "our" are simply incident to their marriage and do not indicate that he has any control over the funds. While the Court understands that in most marriages, a husband does not pay rent to his wife, the Court also understands that in most marriages, spouses share financial responsibility and the benefits of financial prosperity. Sammy did not have a checking account of his own, but Victoria testified that Sammy often wrote checks on her account to pay for utilities and other costs of living in the house. Sammy lives in the home owned by Schofield-Johnson. Victoria further testified that she often transfers funds between the business account and her own personal checking account. Accordingly, the Court finds that Sammy retained control and possession of the Judgment Proceeds. This factor weighs in favor of the IRS.

The fifth factor—whether the transfer was of substantially all the debtor's assets—is also at issue. Specifically, the IRS claims that at the time of the transfer, Sammy's salary was approximately $15,000 a year, and that his assets consisted of a 1994 Jeep Cherokee, an IRA valued at about $3,000, and life insurance policies with a combined cash value of less than $7,000. Accordingly, Sammy's transfer of $1,000,000.00 represented the bulk of his assets. However, Schofield-Johnson argues that Sammy never actually had the funds because they were deposited directly into Victoria's account. The Court finds Schofield-Johnson's argument to be without merit. Sammy had no checking account of his own in which to deposit the funds, but in reality he collected the Judgment

8

Proceeds because he directed that the Judgment Proceeds be deposited into his wife's account. This factor weighs in favor of the IRS.

The eighth and twelfth factor both relate to the value received for the transfer. The parties do not dispute that Sammy received no monetary consideration for his transfer of the funds to Victoria. However, Schofield-Johnson claims that Victoria received valuable consideration for her transfer of the funds to the limited liability company in the form of a 91% interest in the company. The IRS claims that Sammy knew or should have known that the proceeds were taxable, and therefore he reasonably should have known he would be unable to pay his tax liability when he transferred the funds to Victoria. Schofield-Johnson argues that Sammy did not know that the funds would be taxable at the time of his transfer to Victoria. Furthermore, when he found that the funds were taxable, he sent $1,000.00 along with his tax return, believing in good-faith that he could and would be able to pay his liability in installments from his own funds. The Court finds that Victoria's receipt of 91% of the ownership of a company over which she had complete control and dominion does not constitute reasonably equivalent value for the assets. Furthermore, the Court finds that Sammy knew or reasonably should have known that the funds were taxable at the time of his transfer to Victoria. Even if Sammy did not understand that the funds were taxable at that time, he eventually became aware that they were taxable and never asked Victoria for any money with which to pay his debt to the IRS. Instead, he filed a return admitting his tax liability and enclosed a mere $1,000.00. When a representative of the IRS was appointed to investigate his case, Sammy even went so far as to offer the IRS $40,000.00 up front, and $300.00 per month for the rest of his life. Sammy was unable to explain the source of the $40,000.00 that he offered if the money was not to come from the Judgment Proceeds themselves. These two factors weigh heavily in favor of the IRS.

The tenth factor—that the transfer was made shortly before or after a substantial debt was incurred—is also implicated by the facts of the case. The IRS contends that Sammy reasonably should have known that the proceeds were taxable, and therefore the obligation arose as soon as he was awarded the judgment. Schofield-Johnson argues that Sammy did not know that the entire judgment was taxable until after the Murphy case was resolved in 2007. Furthermore, Schofield-Johnson argues that the transfer to the LLC did not occur until two years later after the judgment was awarded, and that this transfer was in good faith and for valuable consideration. As discussed above, the Court finds that Sammy knew or reasonably should have known that the Judgment Proceeds were taxable, and that neither the transfer to Victoria, nor the subsequent transfer to the LLC was in good faith or for valuable consideration. This factor weighs in favor of the IRS.

Finally, Schofield-Johnson asserts that the thirteenth factor—that the transfer was made in the course of legitimate estate or tax planning—is in its favor. Schofield-Johnson claims that Victoria transferred the funds to the limited liability company in order to protect her assets from potential malpractice claims that might be brought against her as a result of her medical practice. However, the IRS argues that the relevant transfer is the one from Sammy to Victoria, and that since Sammy never relinquished control over the funds, Schofield-Johnson is merely a nominal owner of the funds. While the protection of assets against potential malpractice claims is certainly a legitimate reason to form a limited liability company, the relevant transfer at issue is the one between Sammy and Victoria. The only stated purpose for that transfer was that Sammy allegedly did not want anything to do with the funds. Whether Schofield-Johnson can avoid the levy of the IRS as a subsequent good-faith transferee for value is discussed in more detail below. However, this factor weighs in favor of the IRS.

10

Since the overwhelming majority of the factors favors the position of the IRS, the Court finds that the transfer from Sammy to Victoria was fraudulent under North Carolina law.

**C.    Whether Schofield-Johnson is a good-faith transferee**

Despite the fact that the transfer of the Judgment Proceeds from Sammy to Victoria was fraudulent, Schofield-Johnson may still avoid the levy of the IRS if it can establish that it is a "good-faith transferee for value" entitled to protection under N.C. Gen.Stat. § 39-23.8(a). According to the statute, "[a] transfer or obligation is not voidable under G.S. 39-23.4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." N.C. Gen.Stat. § 39-23.8(a). The party invoking the defense bears the burden of proof by a preponderance of the evidence on its status as a good-faith transferee. N.C. Gen.Stat. § 39-23.8 cmt (1) (citing Chorost v. Grand Rapids Factory Showrooms, Inc., 77 F.Supp. 276, 280 (D.N.J. 1948), aff'd 172 F.2d 327, 329 (3d Cir. 1949)). Furthermore, while this section is based on Section 550 of the Bankruptcy Code, the North Carolina legislature purposefully omitted any language requiring the subsequent transferee be without knowledge of the voidability of the transfer at issue in order to mount a successful defense. N.C. Gen.Stat. § 39-23.8 cmt (1). Specifically, "[k]nowledge of the voidability of a transfer would seem to involve a legal conclusion. Determination of the voidability of the transfer ought not to require the court to inquire into the legal sophistication of the transferee." Id. at cmt (2). In addition, subsection (f)(2) provides that transfers made in the ordinary course of financial affairs, even to an insider, may be protected by a good-faith transferee defense. N.C. Gen.Stat. § 39-23.8(f)(2); see also cmt (6).

Schofield-Johnson's status as a "good-faith transferee" is critical to determining what remedies are available to the IRS under Section 39-23.8. If Schofield-Johnson is, in fact, a good-

faith transferee, the IRS is barred from collecting a judgment against it pursuant to Section 39-23.8(a). However, N.C. Gen.Stat. § 39-23.8(b) provides that if the transfer is voidable as a fraudulent conveyance, a creditor may recover a judgment against either "(1) The first transferee of the asset or the person for whose benefit the transfer was made; or (2) Any subsequent transferee **other than a good-faith transferee who took for value or from any subsequent transferee**." N.C. Gen.Stat. § 39-23.8(b)(1) and (2) (emphasis added). Accordingly, if Schofield-Johnson is a good-faith transferee, the IRS could only proceed against Victoria for a judgment under Section 39-23.8(b)(1), and must succeed on its nominee theory in order to collect from Schofield-Johnson. However, if Schofield-Johnson is merely a subsequent transferee of the Judgment Proceeds, the IRS may seek a judgment against the company under Section 39-23.8(b)(2).

Schofield-Johnson argues that it gave Victoria a 91% interest in the company in exchange for the proceeds and property that she contributed, and that other parties contributed value to the company as well. Schofield-Johnson further claims that the transfer from Victoria to Schofield-Johnson was a legitimate business transaction to protect against malpractice claims and to develop family property. While it is undisputed that Victoria received an interest in Schofield-Johnson in exchange for her contribution of funds and property to the company, Schofield-Johnson has not met its burden in proving its status as a good-faith transferee. The overwhelming evidence on the record indicates that Sammy was aware, at least at some point, that the proceeds were taxable, that he discussed these issues with Victoria, and that they both enjoyed the benefits of the Judgment Proceeds by living in a house built and decorated with the funds. While North Carolina law does not require the transferee to be without knowledge of the voidability of the transfer, Victoria certainly had knowledge of facts that would put a reasonably prudent person on inquiry. See Chorost, 77

F.Supp. at 281. Victoria clearly had knowledge of the facts and circumstances surrounding the source of the funds, and she knew that Sammy had admitted a tax liability that he was trying to negotiate with the IRS. Victoria's knowledge is properly imputed to the company. Accordingly, Schofield-Johnson is not entitled to protection as a good-faith transferee for value.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the transfer of the Judgment Proceeds from Sammy to Victoria was fraudulent and that, accordingly, under North Carolina law, Schofield-Johnson is the nominee of Sammy Johnson. Further, the Court finds that Schofield-Johnson is not a good-faith transferee for value and is therefore not entitled to a defense against the claims of the IRS based under N.C. Gen.Stat. § 39-23.4(a). Accordingly, judgment in this case will be entered in favor of the IRS.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCHOFIELD-JOHNSON, LLC, | ) | Case No: 09-81347 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SCHOFIELD-JOHNSON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No: 09-09067 |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, COMMISSIONER OF INTERNAL REVENUE SERVICE | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **PARTIES IN INTEREST**

Anne E. Blaess, Esq.

W.Y. Alex Webb, Esq.